**ATTACHMENT A**

**STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between at least in or about January 2013 and in or about May 2018, the Defendant, **EDWARD T. BUFORD, III** ("**BUFORD**") knowingly and willfully conspired with **Kasandra Vilchez-Duarte** ("**Vilchez-Duarte**"), **Donnie Amis** ("**Amis**"), and others to devise and execute a scheme to defraud Medicaid, a health care benefit program, and to obtain money and property from and under the custody and control of Medicaid by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services, and, for the purpose of executing of executing and attempting to execute the scheme to defraud, knowingly caused to be deposited into the mail, and delivered by mail, any matter or thing, in violation of 18 U.S.C. §§ 1347 and 1341.

Medicaid was a health care benefit program that provided medical and dental insurance coverage to individuals with low incomes and limited resources. The Medicaid program in the District of Columbia ("Medicaid") was administered by the District of Columbia Department of Health Care Finance ("DHCF") and jointly funded by the federal government and the District of Columbia. Individuals who received benefits under Medicaid were called "beneficiaries" or "recipients," and companies or individuals that enrolled in Medicaid and purported to provide covered medical services, including dental services, to beneficiaries were known as "providers." To become a provider, a company or individual had to submit an enrollment application and certify, among other things, that the provider agreed to abide by all federal and local laws, regulations, and program manuals applicable to providers.

Medicaid would not pay claims submitted by any provider for medical or dental services if Medicaid knew that the claimed services were (1) not medically necessary, (2) not provided as billed, or (3) the result of a violation of the federal Anti-Kickback Statute, which prohibited knowingly and willfully offering, paying, soliciting, or receiving any remuneration (including any kickback or bribe) in exchange for, among other things, referring any individual for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, including Medicaid.

**BUFORD**, a resident of Maryland, was a licensed dentist in the District of Columbia and the owner and Chief Executive Officer of International Dental Associates, Inc. ("IDA"), a dental clinic located in Washington, D.C. Prior to 2015, **BUFORD** was enrolled as an individual provider in Medicaid, but, on or about April 10, 2015, Medicaid suspended payments to **BUFORD** under his individual provider number. **Vilchez-Duarte** was **BUFORD**'s business partner and manager of IDA.

IDA was a provider with Medicaid beginning in and around July 2011. Following the 2015 suspension of **BUFORD**'s provider number, **BUFORD** and **Vilchez-Duarte** continued to submit and cause the submission of claims to Medicaid through IDA's Medicaid provider number. In or around April 2016, **BUFORD** and **Vilchez-Duarte** re-enrolled IDA as a provider in Medicaid. In response to the application question, "Have you ever been suspended from the Medicare or Medicaid program, or has your participation status ever been modified (terminated, suspended, restricted, revoked, limited, cancelled)," **BUFORD** and **Vilchez-Duarte** failed to disclose **BUFORD**'s suspension from Medicaid.

**BUFORD**, with his co-conspirators, caused the submission of claims by **BUFORD** and IDA for a variety of dental services, including dentures. Medicaid paid providers substantially more for dentures than for many other dental services, including dental cleanings. Fitting a beneficiary for dentures included numerous steps over multiple office visits, including an initial visit during which the dentist took an impression of the beneficiary, subsequent visits to try on the dentures and make adjustments for fit and appearance, and the ultimate delivery of the dentures to the beneficiary. A claim to Medicaid for dentures was a global charge including all parts of this process. Because a provider had to incur costs while the process was ongoing, including paying a dental lab to fabricate the dentures, Medicaid permitted providers to bill for dentures after taking the impression of the beneficiary and before the dentures were ultimately delivered.

As part of the conspiracy and scheme to defraud, **BUFORD** and **Vilchez-Duarte** offered and paid kickbacks to **Amis** and other patient recruiters in exchange for referring Medicaid beneficiaries to IDA for dental services. **BUFORD** sent text messages encouraging **Amis** and others to recruit Medicaid beneficiaries to IDA for dental services, especially dentures and extractions. For example, on or about December 13, 2016, **BUFORD** sent **Amis** a text message stating, "Donnie please get some extractions and Dentures!!!!" On or about January 11, 2017, **BUFORD** sent **Amis** and others a text message stating, "Good Morning guys!!! Please look Dentures,, Root Canals and Extractions!! Be safe and good hunting!!! Dr B". And, on or about February 1, 2017, **BUFORD** sent **Amis** and others a text message stating, "Listen Guys let's get out and RECRUIT SOME DENTURES AND EXTRACTIONS!!! What you all do is Important to our Office!!!!! Dr B".

**BUFORD** and **Vilchez-Duarte** paid **Amis** larger cash kickbacks—typically approximately $50 per beneficiary—for beneficiaries **Amis** recruited who agreed to be fitted for dentures than for beneficiaries who only agreed to receive dental cleanings, as dentures resulted in higher reimbursement amounts from Medicaid. **Amis**, in turn, at the direction of **BUFORD** and **Vilchez-Duarte**, offered Medicaid beneficiaries cash bribes to induce them to visit and accept dental services from IDA. Such bribes were generally paid at the front desk when the beneficiary visited IDA. **BUFORD** and his co-conspirators paid a larger amount—typically approximately $20—to each recruited beneficiary who agreed to be fitted for dentures, and a smaller amount—typically approximately $10—to recruited beneficiaries who agreed to receive cleanings from IDA.

Even though dentures require a multiple visit process to fit and deliver, **BUFORD** and his co-conspirators paid the beneficiaries only for the initial visit to be fitted for dentures. Accordingly, numerous beneficiaries never returned to IDA after receiving the cash bribe.

BUFORD and his co-conspirators stored on IDA's premises hundreds of undelivered dentures, many of which had been billed to and paid for by Medicaid.

BUFORD and his co-conspirators caused claims to be submitted to Medicaid for dental services, including dentures, purportedly provided to the recruited beneficiaries, even though Medicaid would not have paid the claims had it known that they were procured through kickbacks. BUFORD maintained a Post Office box in Silver Spring, Maryland, as IDA's billing address, and he caused Medicaid to pay claims for dental services purportedly provided to the recruited beneficiaries by mailing checks to this Post Office box. For example, on or about September 13, 2017, BUFORD caused a $50 kickback to be paid to Amis in exchange for recruiting Beneficiary 1, and BUFORD and his co-conspirators caused an approximately $20 bribe to be paid to Beneficiary 1 in exchange for visiting IDA and accepting dental services that could be billed to Medicaid. On or about September 21, 2017, BUFORD and his co-conspirators caused Medicaid to mail a check in the amount of $17,397 to the Maryland P.O. box for services purportedly provided to eleven Medicaid beneficiaries, including $1,050 for a partial denture purportedly provided to Beneficiary 1.

The intended loss to Medicaid reasonably foreseeable to BUFORD and within the scope of the conspiracy was more than $1,500,000 but not more than $3,500,000. In addition, based on the amount that Medicaid paid to BUFORD and IDA for dentures that were not delivered, the actual loss to Medicaid, which is a Government health care program, was at least approximately $1,267,630. BUFORD was an organizer, leader, manager, or supervisor in the criminal activity. As a licensed dentist and a provider enrolled with Medicaid, BUFORD abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.

SO STIPULATED:

Jessica C. Collins
Rajeev R Raghavan
Assistant United States Attorneys

Edward T. Buford, III
Defendant

Michael Lawlor, Esq.
Nicholas G. Madiou, Esq.
Counsel for Defendant